<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| VICTOR RUBEN CONNELLY, | : | Civil Action No. 12-2123 (NLH) |
| Plaintiff, | : | |
| v. | : | <u>MEMORANDUM OPINION</u> |
| | : | <u>AND ORDER</u> |
| GEORGE WREN, | : | |
| Defendant. | : | |

IT APPEARING THAT:

1. Plaintiff Victor Ruben Connelly ("Plaintiff") submitted for filing a civil complaint ("Complaint") and his application to proceed in this matter <u>in forma pauperis</u>. <u>See</u> Docket Entries Nos. 1 and 1-1. In his Complaint, Plaintiff alleged that, on February 2, 2012, at about 11:00 p.m., Plaintiff – an African-American – was "dropped off" by his friend Jerome Lanick, a Caucasian, at Plaintiff's residence in Atlantic City. <u>See</u> Docket Entry No. 1, at 4. Plaintiff also asserts that Detective Wren, named as Defendant in this matter, immediately and for no reason other than Plaintiff's race, "apprehended and searched" Plaintiff upon his exiting Lanick's car. <u>Id</u>. Plaintiff's Complaint adds that Lanick too "was stopped [by police] about a block away." <u>Id</u>. On the basis of these allegations, Plaintiff seeks damages in the amount of his weekly wages for at least nine weeks (presumably the period of time Plaintiff was not working due to his incarceration), as well as damages for "pain and suffering," which Plaintiff seeks on behalf of himself and his wife. <u>See</u> <u>id</u>. at 5-6.

2. In light of the information provided in Plaintiff's in forma pauperis application and the absence of three disqualifying strikes, the Court will grant Plaintiff in forma pauperis status and order the Clerk to file the Complaint.

3. The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil action in which a plaintiff is proceeding in forma pauperis and to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B). Ashcroft v. Iqbal, 556 U.S. 662 (2009), hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), which was previously applied to determine if a federal complaint stated a claim. See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009). The pleading standard under Rule 8 was refined by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), where the Supreme Court clarified as follows:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

> alleged-but it has not "show[n]" - "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S. Ct. at 1949 -1950 (citations omitted). Since Iqbal, the Third Circuit has required district courts to conduct a three-part analysis when reviewing a complaint for dismissal for failure to state a claim:

> To determine the sufficiency of a complaint under the [Iqbal] pleading regime . . . , a court must take three steps: First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

Santiago v. Warminster Twp., 629 F. 3d 121, 130 (3d Cir. 2010) (footnote omitted). The Court, however, is mindful that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). We apply this rule even after Iqbal.

4. Here, construing Plaintiff's claims liberally, the Court identifies four claims: (a) a loss of consortium claims raised by Plaintiff on behalf of his wife; (b) a racial profiling claim raised by Plaintiff based on his status as an African-American; (c) an illegal search claim raised by Plaintiff in which he seeks compensatory and punitive damages; and (d) a false arrest/imprisonment claim in which Plaintiff seeks lost wages and, seemingly, punitive

damages as well.  For the reasons detailed below, Plaintiff's claims raised <u>jus</u> <u>tertii</u> will be dismissed for lack of standing, and Plaintiff's racial profiling claim will be dismissed for failure to state a claim upon which relief can be granted.  Plaintiff's illegal search and false arrest/imprisonment claim will be allowed to proceed past the <u>sua</u> <u>sponte</u> stage but solely with regard to the damages incurred by Plaintiff as a result of the alleged search and the period of confinement that took place from the point of the arrest and until the first legal action taken against Plaintiff.

5. To the extent Plaintiff seeks to raise loss-of-consortium claims on behalf of his wife, Plaintiff is without standing to raise such challenges.  Under the "next friend" doctrine, standing is allowed to a third person to file and pursue a claim on behalf of someone who is unable to do so.  The doctrine dates back to the English Habeas Corpus Act of 1679 and provides a narrow exception to the "case or controversy" requirement set forth in the Article III of Constitution.  <u>See</u> <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 154-55 (1990). The Whitmore Court set out two requirements for one seeking to qualify for "next friend" standing: (1) "the 'next friend' must be truly dedicated to the best interests of the person on whose behalf [(s)he] seeks to litigate" (and it has been suggested that a "'next friend' must have some significant relationship with the real party in interest"); and (2) "the 'next friend' must provide an adequate explanation — such as inaccessibility, mental incompetence, or other disability — why the real party in interest cannot appear on his own behalf to prosecute the action."  <u>Id.</u> at 163-64.  Since <u>Witmore</u>, the Supreme Court further elaborated the standing requirements of Article III in terms of a three-part test, <u>i.e.</u>, whether the plaintiff can demonstrate an injury in fact that is fairly traceable to the

challenged actions of the defendant and likely to be redressed by a favorable judicial decision. See Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 102-103 (1998). However, "the point has always been the same: whether a plaintiff 'personally would benefit in a tangible way from the court's intervention.'" Id., at 103 n. 5 (quoting Warth v. Seldin, 422 U.S. 490, 508 (1975)); see also, Sprint Communs. Co., L.P. v. APCC Servs., 554 U.S. 269, 301 (2008) (Roberts, J., dissenting) ("The absence of any right to the substantive recovery means that respondents cannot benefit from the judgment they seek and thus lack Article III standing. 'When you got nothing, you got nothing to lose'") (quoting, with correction of grammar, Bob Dylan, Like A Rolling Stone, in On Highway 61, Revisited (Columbia Records 1965)). Here, Plaintiff cannot proceed jus tertii on behalf of his wife since no statement made in the Complaint suggests, even vaguely, that Plaintiff's wife lacks mental capacity to seek vindication of her own claims, if any.

6. Plaintiff's racial profiling claim is also deficient. Selective enforcement of the law based on race, commonly referred to as "racial profiling," is a violation of the Equal Protection Clause, since the Clause "prohibits selective enforcement of the law based on considerations such as race." Whren v. United States, 517 U.S. 806, 813 (1996). As the Court of Appeals explained in Carrasca v. Pomeroy, 313 F.3d 828 (3d Cir. 2002), "[even t]he fact that there was no Fourth Amendment violation does not mean that one was not discriminatorily selected for enforcement of a law. . . . [E]qual protection claims under the Fourteenth Amendment require a wholly separate analysis from . . . claims under the Fourth Amendment." Id. at 836 (internal citations omitted); accord Gibson v. Superintendent of N.J. Dep't of Law and Pub. Safety, 411 F.3d 427, 440-41 (3d Cir.

2005). "To prevail on an equal protection claim in the racial profiling context, Plaintiffs would have to show that the challenged law enforcement practice had a discriminatory effect and [in addition] was motivated by a discriminatory purpose." Carrasca, 313 F.3d at 834. For the purposes of the first prong of this inquiry, a plaintiff must "show that [he] is a member of a protected class and [in addition] that [he] was treated differently from similarly situated individuals in an unprotected class." Bradley v. U.S., 299 F.3d 197, 206 (3d Cir. 2002). The second prong of this inquiry was examined by the Supreme Court in Iqbal, 556 U.S. at 676-77, where the Court pointed out that a plaintiff asserting an equal protection claim "must plead [facts showing] that the defendant acted with a discriminatory purpose [to permit a reasonable inference that the government-official defendant acted] for the purpose of discriminating on account of race." Here, Plaintiff asserts that he was "apprehended and searched" by Defendant Wren immediately upon Plaintiff's exiting Lanick's car because Plaintiff was African-American. However, Plaintiff simultaneously asserts that Lanick, a Caucasian, was also "stopped" by police just a few moments later, specifically, after Lanick drove only one block away. Therefore, it is apparent that Plaintiff was "apprehended" not on the grounds of his race: had it been otherwise, Lanick, a Caucasian, would have been allowed to drive away. In short, Plaintiff's claim that he was stopped because of his race is simply a conclusion without any supporting facts. The facts that are alleged undermine the claim. This bare, conclusory allegation is not plausible in light of the facts actually pled. Plaintiff's racial profiling claim does not meet the Iqbal pleading standard.

7. We also read Plaintiff's Complaint to allege that he was searched by Defendant Wren without a reasonable basis.[1] The Fourth Amendment guarantees an individual's right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment "prohibits a police officer from arresting a citizen except upon probable cause." Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d Cir.1995). Thus, to prevail on a claim for false arrest, a plaintiff must prove that the officer defendants lacked probable cause to arrest him. See Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995). Likewise, a claim for false imprisonment based on the arrest underlying the false arrest claim also requires a plaintiff to prove lack of probable cause. See id. at 636. Consequently, "[t]he proper inquiry in a Section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense."[2]

---

[1] We construe his Complaint this way in an exercise of caution and because of his pro se status even though a certain statement made by Plaintiff in his Complaint seeds doubt as to such a construction. Specifically, Plaintiff's Complaint notes, in passing and without any elaboration, that Defendant Wren was "also [an] af[f]iant of the warrant." Docket Entry No. 1, at 4. This statement could be read as suggesting that, prior to Plaintiff's "search and apprehension," a proper warrant was issued authorizing Plaintiff's arrest. If so, Plaintiff's arrest was likely constitutional and his search, incident to that lawful arrest, was constitutional too. We will allow this claim to proceed despite this ambiguity. The Fourth Amendment protects against unreasonable searches as well as unreasonable seizures. An officer must have probable cause to perform a lawful warrantless search. See Arizona v. Gant, 556 U.S. 332 (2009); see also United States v. Frankenberry, 387 F.2d 337 (2d Cir. 1967); United States v. Evans, 385 F.2d 824 (7th Cir. 1967); Hurst v. United States, 425 F.2d 177 (9th Cir.), cert. denied, 400 U.S. 843 (1970); Westover v. United States, 394 F.2d 164 (9th Cir. 1968); Charles v. United States, 278 F.2d 386 (9th Cir.), cert. denied, 364 U.S. 831 (1960); Farrie v. State, Ind., 255 Ind. 681 (1971); People v. Hambrick, 98 Ill. App. 2d 481 (1968); People v. Rogers, 241 Cal. App. 2d 384 (1960).

[2] "[W]hen an officer has probable cause to believe a person committed even a minor crime . . . the balancing of private and public interests is not in doubt [and t]he arrest is constitutionally reasonable." Virginia v. Moore, 553 U.S. 164, 171 (2008). Correspondingly, to

Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir.1988). Since, here, Plaintiff's Complaint seemingly asserts that he was arrested for no reason whatsoever and without a valid warrant for his arrest, the Court will direct Defendant to answer Plaintiff's arrest and search challenges.

8. However, we note that Plaintiff appears to assert damages beyond what Plaintiff may recover in the event he succeeds on his false arrest claim. "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to *that* arrest." Groman v. Manalapan, 47 F.3d 628, 636 (3d Cir. 1995) (emphasis supplied); Palma v. Atlantic County, 53 F. Supp. 2d 743, 755 (D.N.J. 1999), see also Anela v. City of Wildwood, 595 F. Supp. 511, 512 (D.N.J. 1984) (holding a person for any length of time without legal justification may be a violation of the right to liberty under the Fourteenth Amendment and thus states a claim of false imprisonment under § 1983). Notably, the period of false arrest is very short: a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest, refers only to the period of incarceration lasting from the moment of arrest until the first legal action, e.g., an arraignment. See Groman v. Manalapan, 47 F.3d at 636. Indeed, the Supreme Court explained that, "[f]alse arrest and false imprisonment overlap; the former

---

establish a claim for unlawful arrest in violation of the Fourth Amendment, a plaintiff must state "the facts [showing that under the] circumstances within [the officer's] knowledge, a reasonable officer could not have believed that an offense had been or was being committed by the person to be arrested." Mosley v. Wilson, 102 F.3d 85, 94-5 (3d Cir. 1996); accord Revell v. Port Authority of New York, New Jersey, 598 F. 3d 128, 137 n.16 (3d Cir. 2010). "Probable cause requires more than bare suspicion, but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." Hughes v. Meyer, 880 F. 2d 967, 969 (7th Cir. 1989).

is a species of the latter," Wallace v. Kato, 549 U.S. 384 (2007), and the damages recoverable under such claim are limited to those ensuing from the period of detention until the first legal action.

IT IS THEREFORE on this __3rd__ day of __January__, 2012,

ORDERED that Plaintiff's application to proceed in forma pauperis is granted; and it is further

ORDERED that the Clerk shall file Plaintiff's Complaint, Docket Entry No. 1; and it is further

ORDERED that Plaintiff's challenges raised jus tertii on behalf of his wife are dismissed for lack of standing; and it is further

ORDERED that Plaintiff's racial profiling challenges are dismissed for failure to state a claim upon which relief can be granted; and ut is further

ORDERED that Plaintiff's claims asserting that he was subjected to a warrantless arrest without probable cause and seeking damages on the basis of Plaintiff's confinement that occurred prior to the first legal action taken against Plaintiff may proceed past the sua sponte dismissal stage; and it is further

ORDERED that Plaintiff's claims asserting that Plaintiff was searched without probable cause, including his assertion that his search was not incidental to a lawful arrest, may proceed past the sua sponte dismissal stage; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(d), the Clerk shall issue summons, and the United States Marshal shall serve copies of the Complaint, summons, and this Memorandum Opinion and Order upon Defendant Wren, pursuant to 28 U.S.C. § 1915(d); and it is further

ORDERED that served Defendant Wren shall file and serve a responsive pleading within the time specified in Federal Rule of Civil Procedure 12, pursuant to 42 U.S.C. § 1997e(g)(2). Such responsive pleading shall address solely the claims proceeded past the sua sponte dismissal stage; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(e)(1) and § 4(a) of Appendix H of the Local Civil Rules, the Clerk shall notify Plaintiff of the opportunity to apply in writing to the assigned judge for the appointment of pro bono counsel in accordance with the factors set forth in Tabron v. Grace, 6 F.3d 147 (3d Cir. 1993), cert. denied, 510 U.S. 1196 (1994), which sets forth the requirements for eligibility for appointment of pro bono counsel.  Plaintiff is expressly advised that such appointment is neither guaranteed nor automatic; and it is further

ORDERED that the Clerk shall enclose with such notice a copy of Appendix H and a form Application for Appointment of Pro Bono Counsel; and it is further

ORDERED that, if at any time Plaintiff seeks the appointment of pro bono counsel, pursuant to Fed. R. Civ. P. 5(a) and (d), Plaintiff shall (1) serve a copy of the Application for Appointment of Pro Bono Counsel by regular mail upon each party at his last known address, or, if the party is represented in this action by an attorney, upon the party's attorney at the attorney's address, and (2) file a Certificate of Service with the Application for Pro Bono Counsel; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(b), the Clerk of the Court shall forward a copy of this order by regular mail to the Attorney General of the State of New Jersey and the warden of the place of Plaintiff's current confinement; and it is further

ORDERED that Plaintiff is assessed a filing fee of $350.00 which shall be deducted from his prison account pursuant to 28 U.S.C. § 1915(b)(2) in the manner set forth below; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(b)(1)(A), Plaintiff is assessed an initial partial filing fee and, when funds exist, the agency having custody of Plaintiff shall deduct said initial fee from Plaintiff's prison account and forward it to the Clerk of the Court; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(b)(2), until the $350.00 filing fee is paid, each subsequent month that the amount in Plaintiff's prison account exceeds $10.00, the agency having custody of the plaintiff shall assess, deduct from Plaintiff's account, and forward to the Clerk of the Court payments equal to 20% of the preceding month's income credited to Plaintiff's prison account, with each payment referencing the docket number of this action; and it is finally

ORDERED that the Clerk of the Court shall serve a copy of this Memorandum Opinion and Order upon Plaintiff by regular U.S. mail.

      s/ Noel L. Hillman
**NOEL L. HILLMAN**
**United States District Judge**

At Camden, New Jersey